## JOHN A. GARDNER *v.* HOPE INSURANCE COMPANY.

A stockholder in an insurance company, the charter of which provided, at the
time he purchased his stock, "that the stockholders should not be liable to
any responsibility further than the amount of their respective shares and
interest thereon, for or on account of any damage or loss sustained by said
company, or for or on account of any debt due thereon," cannot object to an
assessment made upon him under and in conformity to the provisions of chap-
ter 635 of the Statutes, which provides that, "whenever the capital stock of
any insurance company shall be diminished by reason of losses, or from any
other cause, the stockholders of said company, at any legal meeting thereof
called for the purpose, may (after making due allowance from the assets of the
company of such amount as may be required to re-insure its outstanding risks)
assess such further sum as may be necessary to fill up the capital stock to its
original amount, upon the several stockholders in proportion to the amount
of stock owned by each, and the stock of every stockholder shall be pledged
and liable for such assessment," although said last named Act was passed
subsequently to his purchase of stock;—when the General Assembly have
expressly reserved to themselves the power in the charter to alter, amend, or
repeal it at pleasure.

THIS was an action brought to recover the value of shares
in the capital stock of the defendant corporation, which the
defendants refused to transfer upon the order of the plaintiff.

The defendants refused the transfer, because of an alleged indebtedness of the plaintiff to the corporation for unpaid assessments on said stock, made to fill up the capital of the company, reduced from its original amount by losses in business.

The case was submitted to the court upon an agreed statement of facts, in which it was admitted that the assessments in controversy were regularly made in accordance with the provisions of chapter 635 of the Public Laws. Also, that the company's charter was granted subject to amendment by the General Assembly, as provided by section 14 of chapter 125 of the Revised Statutes.

*B. F. Thurston and Gardner, for the plaintiff* :—

The question raised by the agreed statement of facts in the case is, whether or not the assessment upon plaintiff's fully paid stock, made without his assent, to make good depreciations of the capital stock, is legally due and payable from him to the corporation.

I. Having become the owner, prior to the passage of chapter 635 of the Public Laws, of fourteen shares of fully paid stock of the corporation, the plaintiff had acquired, by contract, the obligations of which neither the legislature, or the corporation acting under its authority, could alter or impair, a vested right of property in said shares concerning which he could not be disturbed, or subjected to additional burdens, as contemplated by said chapter, without his assent. *Hartford & New Haven Railroad Co.* v. *Crowell*, 5 Hill, (N. Y.) 383 ; *Winter* v. *Muscogee Railroad Co.* 11 Ga. 438 ; *Byron Stevens* v. *Rutland & Burlington Railroad Co.* 20 Vt. 545 ; *E. P. Livingston* v. *D. Lynch, Jr., et al.* 4 Johns. Ch. 573 ; *Gifford* v. *N. J. Railroad Co.* 2 Stockton's Chancery, N. J. 171 ; *Fay's Executors* v. *Livingston and Big Sandy Railroad Co.* 2 Met. (Ky.) 324 ; *Scofield* v. *8th School District*, 27 Conn. 499 ; *Indiana and Ebensburg Turnpike Road Co.* v. *Amon Phillips*, 2 Penrose & Watts, (Penn.) 184 ; *Everhart* v. *Phil. and Westchester Railroad Co.* 28 Penn. 339 ; *Ellis* v. *Marshall*, 2 Mass. 269 ; *Hamilton Mutual Insurance Co.* v. *Hobart*, 2 Gray, 543 ; *N. C. J. & G. N. Railroad Co.* v. *Harris*, 27 Miss. 517 ; *Middlesex Turnpike Co.* v. *Locke*, 8 Mass. 268 ;

*Call* v. *Hagger et al.* 8 Mass. 430 ; *Great Falls and Conway Co.* v. *Copp*, 38 N. H. 124 ; *Kennebec and Portland Railroad Co.* v. *Kendall*, 31 Maine, 370 ; *Titcomb* v. *N. M. and F. Ins. Co.* 8 Mass. 326 ; *Boston and Lowell Railroad Co.* v. *Salem and Lowell*, 2 Gray, 1 ; *Fletcher* v. *Peck*, 6 Cranch, 87 ; *Curran* v. *State of Arkansas*, 15 How. 304 ; *Planters Bank* v. *Sharp*, 6 How. 301 ; *Burmester* v. *Norris*, 8 Eng. L. & E. 487; *Gupcke et al.* v. *City of Dubuque*, 1 Wall. 175 ; *Florentine* v. *Barton*, 2 Wall. 10 ; *The Binghampton Bridge*, 3 Wall. 51 ; *Havemeyer* v. *Iowa Co.* 3 Wall. 294 ; *McGee* v. *Mather*, 4 Wall. 143 ; *Osborn* v. *Bank U. S.* 9 Wheat. 738 ; *Union Locks and Canal Co.* v. *Towne*, 1 N. H. 44 ; *Banet* v. *Alton and Sangamon Railroad Co.* 13 Ill. 505 ; *Middlesex Turnpike Co.* v. *Swan*, 10 Mass. 384, 390 ; *Ware* v. *Grand Junction Water Co.* 2 Russell & Mylne, 461 ; *Green* v. *Briggs*, 1 Car. 311 ; *Dartmouth College* y. *Woodward*, 4 Wheat. 535 ; *Trente* v. *Taylor*, 9 Cranch, 43 ; *Atlantic DeLaine Co.* v. *Mason et al.* 5 R. I. 463.

II.  Section 14 of chapter 125 of the Revised Statutes does not give or imply power to alter such vested right acquired under the charter by the plaintiffs ; for it is the charter, only and the rights and liabilities of the corporation and of its corporators as such in consequence thereof, that can be varied by act of the legislature, and not the private contracts made between the corporation as one party and of its corporators as the other. *Oldtown and Lincoln Railroad Co.* v. *Veazie*, 39 Me. 571 ; *Allen* v. *McKim*, 1 Sum. 276 ; *Sage, &c.* v. *Dillard, &c.* 15 B. Monroe, 340; *City of Louisville* v. *President and Trustees University of Louisville*, 15 B. Monroe, 642 ; *University of Maryland* v. *Williams*, 9 Gill. & Johns. 409 ; *St. Mary's Church*, 7 S. & R. 562 ; *Cincinnati* v. *Evans & Co.* 13 Gray 253.

III.  The fact that chapter 635 is a public law instead of an amendment to the charter, does not vary the question of power to interfere with the plaintiff's vested rights in the manner contemplated by said chapter, for the authorities above cited clearly show that it could not be legally done either by authority of public or private legislation.  *Hampshire* v. *Franklin*, 16 Mass. 84.

*Currey, for the defendants :*—

I.   Acceptance by a chartered company of its acts of incorporation, enacted subject to the provisions of section 14, chapter 125 of the Revised Statutes, is an implied assent on the part of the corporators, to all such amendments of their charter as may, from time to time, be demanded by public policy.   Such amendments may be made by special act, or general law, and at the instance of the corporators or some of them, or at the will of the legislature.   1.  Amendment does not import perversion; it is alteration, addition or modification, consistent with the fundamental character of the thing amended and its original design. With this limitation, the provisions of section 14 of chapter 125 of the Revised Statutes, are constitutional, wise and conservative. *Banet* v. *Alton & Sangamon Railroad Co.* 13 Ill. (505) 511–13; *Stevens* v. *Rutland & Burlington Railroad Co.* 29 Vt. (545) 549–50 ; *Everhart* v. *W. C. P. R. R. Co.* 28 Penn. 339 ; *Fry's Executors* v. *Lex. & B. Sand'y R. R. Co.* 20 Met. (Ky.) 314 ; 1 Redfield on Railways, 71, 72 and note 3 ; *Louis. Cin. & Charleston Railroad Co.* v. *Letson,* 2 How. (U. S.) 497 ; *St. Mary's Church,* 7 S. & R. 517 ; *N. O., Jackson, &c. Railroad Co.* v. *Harris,* 27 Miss. 517 ; *Ex parte, Royers,* 7 Cow. 526.   2. The provisions of chapter 635 are to be considered as amendments incorporated in the charter of the defendant company demanded by public policy, beneficial to the company, consistent with and auxiliary to its object and design.   *a.* They were demanded by public policy, for it would be a fraud on the public for the government of the state to permit a corporation of its own creation to continue the business of insurance without capital, or after the loss of its capital.   *b.* They are beneficial to the company, for without sufficient capital, or with a diminished capital, the company would lose credit, its stock would depreciate, and its affairs must come to a disastrous end.   *c.* The amendments were consistent with the original design of the act of incorporation, the first object of which was a business capital, and they were auxiliary to that design as furnishing or providing a power to keep the capital good to its original amount.

II.   The plaintiff subscribed for his stock and became a mem-

ber of the company, with knowledge of the reserved rights of amendment of the charter on the part of the legislature, and therefore with his voluntary assent thereto. 1. A contingent right of further assessment to make good a diminished capital resulting from this reserved right of legislative amendment, was therefore a part of the plaintiff's contract of subscription. The contingency has happened and he is bound by his contract. 2. The plaintiff's stock being liable to this further assessment, it is pledged to the corporation for its payment, as for a debt secured to the corporation by its charter. Section 3, original charter. 3. According to these principles the defendants had a right to refuse the transfer of the plaintiff's shares, and are entitled to judgment for their costs.

BRAYTON, C. J. The charter of this company, as it was originally enacted, in June, 1858, provided, that after the capital stock should be paid, the directors should, once a year or oftener, cause a dividend of so much of the profits of the company as they may judge advisable. *Provided, however, that in case of a diminution of the capital stock by losses, no dividend shall be made, until a sum equal to such diminution, arising from the profits, be added to the capital stock.*

There was another proviso, viz., section 3 of the charter, which declares, " that the stockholders of said company shall not be liable to any responsibility farther than the amount of their respective shares and interest thereon, for or on account of any damage or loss sustained by said company, or for or on account of any debts due thereon."

The charter was passed and made subject to the provisions of chapter 125, section 14 of the Revised Statutes, which provides, that " all acts of incorporation hereafter granted may be amended or repealed at the will of the General Assembly, unless express provision shall be made therein to the contrary."

In March, 1866, by chapter 635, it was enacted, that " whenever the capital stock of any insurance company shall be diminished by reason of losses or from any other cause, the stockholders of such company, at any legal meeting thereof called for the purpose, may (after making due allowance from the

assets of the company of such amount as may be required to re-insure its outstanding risks) assess such further sum as may be necessary to fill up the capital stock to its original amount upon the several stockholders, in proportion to the amount of stock owned by each, and the stock of every stockholder shall be pledged and liable for such assessment."

The assessment in question was made under, and in strict conformity to, the provision of this chapter, and the questions raised is, whether the assessment so made is a valid assessment.

The plaintiff contends, that the stockholders had no lawful authority thus to assess any stock fully paid ; that the act purporting to confer such authority does not bind the corporation or the members thereof; and that it was not competent for the legislature to confer any such power ; and, so far as the act purports to authorize the assessment on plaintiff's stock, it is simply void ; and he says, in argument, that the legislature can have no constitutional power to alter or impair the obligation which the plaintiff had acquired by contract in the purchase of his shares of paid up stock; that he has a vested right of property in these shares, as to which he could not be disturbed or subjected to additional burdens contemplated by chapter 635. The proposition that the legislature cannot impair the obligation of a contract, would not require authority, so far as any right had accrued to the corporation, or any member of the corporation, under the power conferred by the charter. It could not be impaired by taking away the power under which that right was acquired. No contract made by the corporation with a third person, or with individual members of the corporation, could be impaired by any alteration of the charter power. But this is quite different from the power to alter, or change, or repeal the powers themselves, so that no such rights could thereafter be enacted, and such contract thereafter be made.

The legislature have reserved the power, at any time to alter or repeal the charter, or any of its provisions. The corporators accepted it upon this condition, and agreed that its provisions might be changed, and every purchaser of stock in this company has assented to these terms, and has agreed to hold his shares

subject to this liability to change. There is no limit to the power expressed in the act. In terms it is unlimited.

There is no difference between the parties here or their counsel as to the *general* rule, that the obligation of a contract in favor of or against the corporation or corporators cannot be impaired, nor can a right under the provisions of the charter be discharged or defeated.

But it is claimed by the plaintiff, that by the original charter he has a right vested in him to be free from assessment, and he rests this claim upon the provision in the charter, that stockholders shall not be liable to any responsibility beyond the amount of their respective shares. He claims that it was a contract entered into with the corporators, that this liability should not be extended. There is no case among all those cited by the plaintiff which holds such doctrine, and he has not been able to find one which supports it.

The cases which are cited do not countenance it, but simply the contrary. It is one of those rights existing only between the corporators and the company as such, not by virtue of any contract entered into, or any act done under the powers conferred by the charter, but solely by force of act of incorporation. And the court, in the case of *Bailey, Trustee,* v. *Trustees of Power Street M. E. Church,* 6 R. I. 491, not cited, held that such is not a vested right where the legislature has reserved the power to change, and that the exemption from taxation of the pews in the church, unless assented to by a majority of pew holders, was a right existing only during the pleasure of the General Assembly, and when the legislature repealed the provision requiring the consent of a majority thereof, and power to tax became unconditional, it impaired the obligation of no contract in the charter, nor did it derogate from any absolute right of the pewholder.

*Commonwealth* v. *Essex Company,* 13 Gray, 239. The company was indicted for violation of a statute, passed in 1856, requiring the company to make and maintain in and around their dam, a way for the free passage of fish. The charter of the company had been amended in 1848, by authorizing an increase of capital stock, upon condition that they pay all damage for

impeding passage of fish accruing to owners above their dam, which amendment the company accepted.

Shaw, C. J., said : " It seems to us that the power" (*i. e.*, to amend or alter) " must have some limit. Though it is difficult to define it." The rule when stated is this : " That where, under power in a charter, rights have been acquired and become vested, no amendment or alteration of the charter can take away the property or rights which have become vested under a legitimate exercise of the powers granted." In that case, it was held, that the defendant company had, under their corporate power, by payment of all damages to the riparian proprietors above, purchased an exemption from any liability to provide other passes for fish, and that no alteration of the charter, however it might prevent the acquisition of similar rights in the future, could destroy those already created and vested.

In *Old Town and Lincoln Railroad Co.* v. *Veazie*, 39 Maine, 471, the court say : " It is the charter only, and the rights and liabilities of the corporation, and of its corporators as such in consequence thereof, that can be varied by an act of the legislature, and not the private contracts between the corporation as one party and of its corporators as the other ; " and the court held that a subscription for stock was a contract between the subscriber and the corporation to pay money for his stock, upon condition that a certain definite sum should be subscribed for, which condition was to be performed by the corporation before it could call for assessments. The corporation might accept an amendment, nevertheless, by which its rights and obligations might be varied and new duties imposed, and by which the rights and duties of its corporators might be increased or diminished.

*Hawthorne* v. *Calef*, 2 Wallace, (U. S.) 10. The statute made stockholders personally liable for corporation debts, and the repeal of the act did not exonerate stockholders from debts then existing in favor of creditors of the corporation. It was held void as to creditors, as impairing the obligation of contracts existing, though the corporators would not be liable for subsequent debts.

*City of Louisville* v. *President and Trustees of University*, 15 B.

Munroe, 642. The corporation had received a donation of property. This was held to be a right derived from contract made under their charter, which could not be destroyed by the legislature or taken from the corporation, being vested under its legitimate powers.

*Meadow Dam Co.* v. *Gray,* 30 Maine, 545, was a suit for subscription for stock. Before payment, an amendment of the charter had been made and accepted, which increased the liability of the stockholders. This was held not to affect the contract to pay for the shares, and that the defendant had subscribed for stock assenting to such change of legislation thought meet to make, and he had no right to object that they had in this respect thought proper to make this change.

There are cases in which it would seem that the power to alter had been reserved. None of them hold, or try to sustain the proposition, that there is any right in any corporator derived solely from the charter, created by the act of incorporation only, and independent of any act done by him, or by the corporation itself under the powers granted by the act, which is so vested that it cannot, by an act of the legislature, be changed. In other words, that if other than a constitutional right, it depended upon the pleasure of the General Assembly.

*Everhart* v. *Penn. & Ohio Railroad Co.* 28 Penn. 339. The original charter authorized the corporation to build and equip a railroad, fixing the amount of capital stock. The capital stock was not sufficient to complete the work intended, and the legislature authorized the creation of preferred stock to the extent of eight thousand shares, to enable the company to complete the road and furnish the necessary rolling stock and equipments. Dividends at the rate of eight per cent. to be made upon such preferred stock, before any dividend upon the unpreferred stock. The suit was for instalment upon subscription for the original stock.

It does not appear that the legislature had reserved any power to alter or amend the charter, but the amendment was accepted by the company. It is not intimated in the opinion, that the case was at all affected by any reservation of authority over the charter.

The court say, that an alteration which works an entire dissolution of the contract entered into by the subscriber to the stock, or which superadds an entirely new enterprise not contemplated, would not be warranted, and the subscriber might resist an assessment for objects essentially different from those originally designed.   But modifications, useful, beneficial to the company, and in accordance with the understanding of the subscribers at the time as to the real purpose, will not impair the subscription or furnish a defence.

The purpose of the amendment, say the court, is to complete the work originally designed, for their advantage, by preferred stock, rather than by a loan, which must have the same preference over the original stock.   The purpose is pursued by the same general means and in a similar mode ; and the subscriber may be presumed to have assented that the company might apply for any amendment necessary or proper for the accomplishment of the end designed by the original association.

In the case before us, the charter provided that when the capital should have been reduced by losses, no dividends should be declared or paid until the capital should be filled up, and for this purpose all the earnings were to be applied until the capital should be again full.   The company had met with those losses and the capital had been impaired, and their profits were diminished in a much greater proportion than the diminution of their capital.   The remedy proposed by an amendment was, to fill up the capital at once by assessment upon the stock, and thereby increase the amount of dividends.   They could, with the stock full, raise the sum necessary to fill it in a much shorter time than if it were not full.   It was, every way, for the benefit of the stockholder, and it was in the prosecution wholly of the original design of the corporation.

If the power to alter or amend this charter had not been reserved therein, and within that of *Everhart* v. *Penn. & Ohio Railroad Co.* 28 Penn. 339, how unquestionable then should it where such reservation was made, and the corporation had be originally assented to its exercise.   If any change could be made, it is difficult to see how one could be made less injurious

to any interest of the stockholders, or more unquestionably beneficial to them.

We are of opinion, therefore, that the assessment was lawfully made, and so, by the agreement of the·parties, judgment must be for the defendants for their costs.

*Judgment for ·defendants for costs.*